C. L. JONES v. R. M. POWERS ET AL:

(Case No. 1868)

1. PURCHASER—TITLE—A purchaser at an execution sale cannot acquire title to land not embraced in the deed through which the judgment debtor held.
2. SAME—See statement of case for facts held to show that the land in controversy was not embraced in such debtor's deed.
3. CONVEYANCE—DEED—FIELD NOTES—If a tract of land has its lines and corners actually established on the ground and the claimant makes a deed to it in reference to those lines and corners, the deed covers the land and may be made the basis of five years limitation, though it may contain an incorrect call for the beginning corner, estimated from a certain corner of a designated survey.
4. COUNTY LINES—ESTABLISHED—CORRECTED—If a county line has once been definitely fixed upon the ground by an actual survey made, reported and approved as required by the statute, a county court has no power to order another survey made and thereby establish another boundary line.
5. SAME—It is only when the county commissioners' court or the commissioner of the general land office decides that the boundaries of a county are not sufficiently well defined that action to make them definite is authorized.
6. SAME—When a county line has been once run, marked upon the ground and established in accordance with law it cannot be said to be indefinite, though it may be incorrect.
7. SAME—None of the statutes seem intended to give the commissioners' court power to correct what may have been incorrect in the establishment of a county line upon the ground; they gave them power to make the line definite and provided that a line run and marked as specified should thereafter be the boundary line. This was a prohibition to any further action looking to the establishment of some other line.
8. SAME—REGISTRATION—Registration made in a county in which land is shown to be by a legal establishment of county lines ought at all times to be held valid registry, even if the county commissioners' court has power to, and subsequently actually does, cause other lines to be established which exclude from the county in which registration has been made land conveyed by a deed formerly registered.
9. SAME—When county lines have never been established the person recording a deed must ascertain, at his peril, in what county the land thereby conveyed is situated. Adams v. Haydon, 60 Tex.

10. SURVEYS—CALLS—If a line of a survey was generally but erroneously supposed to be at a certain place, that fact should be considered in determining what weight ought to be given to the calls for that line in a deed to a neighboring tract; other calls in the deed might be given a controlling influence in determining what lands were conveyed by the deed.

11. SAME—DESCRIPTION—INTENT—If the deed contained such a description of the land conveyed as to show that it was intended thereby to convey a certain tract, in accordance with a survey actually made, the tract would pass regardless of the erroneous call for the line referred to.

APPEAL from Kaufman. Tried below before the Hon. J. A. B. Putman.

Appellant, as plaintiff below, brought this suit in the usual form of trespass to try title against R. M. Powers, and his wife Elizabeth Powers, Mrs. M. A. Allen, surviving wife of A. C. Allen, deceased, John Vesey, and his wife Mrs. Addie Vesey, John Allen, W. H. Allen, Sid Bass, and his wife Mrs Leda Bass, appellees, in the district court of Kaufman county, on June 13, 1884, to recover the possession of four hundred and thirty-three and one-third acres of land situated in Kaufman county, being a part of the Ruth Peckham league and labor survey, and described by metes and bounds as follows, to-wit: Beginning at a stake at the east corner of the J. W. Terrell thirteen hundred acre survey; thence south 45°, east 1204½ varas to a stake in prairie; thench south 45°, west 2030½ varas to a stake in the prairie; thence north 45°, west 1204½ varas to a stake in prairie; thence north 45°, east 2030½ varas to the place of beginning, and claiming title to and possession of the same on January 1, 1883, when the defendants entered upon the premises and ejected him. On May 27, 1885, appellees, defendants in the court below, filed their first amended original answer, and presented therein the following issues, to-wit:

1. A general demurrer to plaintiff's petition.

2. A plea of not guilty.

3. Claiming ownership and possession of two hundred and fifty acres of the Ruth Peckham league and labor survey, bounded and described as follows, to-wit: "Beginning 1703 varas south, 45° east from the north corner of the J. W. Terrell thirteen hundred acre tract, in said survey, a post on the north-east line of the Terrell tract being the north corner of the fence of defendants, enclosing their lands; thence south 45°, east 992 varas to the east corner of the J. W. Terrell tract, post in branch; thence south 45°, west 1425 varas along the south-east line of the J. W. Terrell tract, being the south-east line of the tract formerly owned by L. P. Lively, a lane between fields of defendants and the fields of P. A. Hawkins and Samuel Hunt to corner bois d'arc post; thence north 45°, west 992 varas to corner

bois d'arc post; thence north 45°, east 1425 varas to place of begin-
ning in Kaufman county, Texas.

4.   A plea disclaiming title to any portion of the land mentioned
in the plaintiff's petition, save and except such as might be in
conflict with, or include the premises described in the amended
answer.

5.   A plea of the statutes of limitations of three years.

6.   A plea of the statutes of limitations of five years.

7.   A plea of the statutes of limitations of ten years.

8.   A plea suggesting improvements in good faith for more than
one year next preceding the institution of the suit.

9.   Interpleading their vendor, L. P. Lively, and praying judg-
ment against him on his warranty.

A jury being waived, the matters of fact as well as of law were
submitted to the court, who rendered a judgment for plaintiff for the
land described in his petition, to which defendants in their answer
disclaimed title, but for the premises described in the defendant's
answer, the court found for the defendants, setting out by metes and
and bounds the land described in the defendants' answer, adjudging
the suit against the plaintiff.

Plaintiff proved by the minutes of the commissioners' court of
Kaufman county, that at its February term, 1883, the court ordered,
adjudged and decreed that the true boundary line between Kaufman
county and Rockwall county was a line running through the north
corner of the Ruth Peckham league and labor survey, and that that
portion of the Ruth Peckham survey embracing the land in contro-
versy was situated in Kaufman county, according to the line so
adjudged by the court to be the true line.   And plaintiff further
proved that the division line established by the commissioners' court
as the true division line between Rockwall and Kaufman counties was
the line recognized by the commissioner of the general land office as
the true boundary line between these counties.

Defendants proved by J. E. Dillard, county judge of Kaufman
county, over plaintiff's objections, that previous to the date of the
order of the commissioners' court, there was a dispute between Rock-
wall and Kaufman counties as to where the true boundary line
between them was; that prior to that date, the strip of land including
the land in controversy was considered and understood to be in Rock-
wall county, and that the courts of Kaufman county did not exercise
any jurisdiction over it; that since that date the line had been
considered by the authorities of Kaufman county as the true boundary

line, and the courts of Kaufman county have taken and exercised jurisdiction over that territory. Prior to that date the county of Rockwall exercised jurisdiction over the territory, and for awhile afterwards, but finally ceased to exercise jurisdiction over it. And defendants further proved, over plaintiff's objection, by L. H. Bryant, witness for defendant, that he was a practical surveyor, and had been county surveyor of Kaufman county, and knew the boundary line of that county; that when Rockwall county was first organized, a line was run dividing it from Kaufman county, by proper surveyors, and marked upon the ground; that by the line thus run all the land claimed by defendants was included in Rockwall county; that up to a year or two previous to December 31, 1883, it was recognized and treated as the true line between the counties, and that Kaufman county did not claim the land in controversy as being within its limits, nor did the Kaufman county officials exercise any jurisdiction over it; that in 1883 witness ran out what he believed to be the true line between the counties as called for in the act creating the county of Rockwall, which line was further north and included the land in controversy within the limits of Kaufman county.

The plaintiff proved by B. J. Osborn the following state of facts: "I know the J. W. Terrell thirteen hundred acre survey. I, as agent for Joseph Rowe, sold the thirteen hundred acres to J. W. Terrell in 1860. I surveyed out the land, ran out on the ground and I marked bearing trees at each of the corners thereof. I am a surveyor." And the plaintiff further proved by G. W. McCafferty, that he formerly lived in Rockwall county, and was once surveyor of that county. That he knew the J. W. Terrell survey and had surveyed around it; that he ran around it about ten days before the trial; that he found the bearing trees at each corner of the Terrell tract; that the bearing trees were still standing, and were found on the ground at that time. And he further proved by P. M. Lewis, county surveyor of Kaufman county, as follows: "I know the J. W. Terrell thirteen hundred acre tract of land. I have run around the tract since this suit commenced. I found the bearing trees called for in the field notes at each of the corners thereof, except at the south corner. The J. W. Terrell tract is well identified. The bearing trees at each of the corners I have mentioned are still standing; they are marked as bearing trees; they are the kind of trees called for in the field notes and are at their proper places on the ground; the east corner of the J. W. Terrell tract is well identified, etc."

The plaintiff also proved that he bought the land in controversy in 1873, and that his deed calls for beginning at the east corner of the

J. W. Terrell tract, thence south 45°, east 1204½ varas to stake, etc. Rowe did not regard the tract in controversy as being in the J. W. Terrell survey; Jones did not regard it as being in the J. W. Terrell survey.

*Joseph Huffmaster*, for appellant, on registry, cited: Adams v. Hayden, 60 Tex., 223; R. S., art. 887.

On limitation, he cited: Mitchell v. Burdett, 22 Tex., 633; R. S., art. 4623; Whitehead v. Foley, 28 Tex., 1; Adams v. Hayden, 60 Tex., 223.

On calls, he cited: Jones v. Leath, 32 Tex., 329; Stafford v. King, 30 Tex., 257.

*Manion & Adams* and *Wm. H. Allen*, for appellees, on county boundaries, cited: General Laws of 16th Leg., ch. 129, secs. 7, 8; R. C. S., sec. 690; Burnett v. Burriss, 39 Tex., 501; Castleman v. Pouton, 51 Tex., 84.

On certainty of description, they cited: DeLeon v. White, 9 Tex., 598; Douthit v. Robinson, 55 Tex., 69; Hughes v. Sandal, 25 Tex., 162; Floyd v. Rice, 28 Tex., 344.

On registration, they cited: General Laws of 16th Leg., ch. 129, secs. 7, 8; Milton v. Turner, 38 Tex., 81; McKissick v. Colguhoun, 18 Tex., 148; Frizzell v. Johnson, 30 Tex, 31.

On outstanding title, they cited: Kinney v. Vinson, 32 Tex., 125; Hillman v. Meyer, 35 Tex., 541; Shields v. Hunt, 45 Tex., 426; 3 Wait's Acts. and Def., pp. 12, 109; Perry v. Whipple, 38 Vt., 278.

STAYTON, ASSOCIATE JUSTICE.—Lively could not have acquired title under the sale made to satisfy the judgment against J. W. Terrell to any land not embraced in the deed through which Terrell held. If the field notes of the survey sold to Terrell, as found in the record, be the same as embraced in the conveyance to him, and the testimony of the witnesses, Osborn, McCafferty and Lewis, be true as to the actual location of the Terrell survey, as at first established and now actually found, then it is evident that Lively did not acquire title to the land now in controversy; as is it, that C. L. Jones did acquire title to it through the deed made to him by Parsons, for the land conveyed to him calls to commence at the east corner of the J. W. Terrell survey.

If the field notes of the Terrell survey found in the record are not the same contained in the conveyance made to him that should have been shown. Lively not having acquired title to the land in controversy, so far as shown by the record before us, but two questions remain:

1. Have the vendees of Lively title by limitation?

Whether the deed made to them by Lively embraces the land in controversy is not made clearly to appear by the evidence found in the record. It calls to commence at a point one thousand four hundred and twenty-five varas from the north corner of the Ruth Peckham survey, and if, from the point at which this distance be given, we construct the survey for the defendants in accordance with the calls for course and distance found in the conveyance from Lively to them, the land in controversy will not be covered by their deed. It appears, however, that a survey of the land intended to be sold by Lively to Allen and Powers was actually made, and that the survey so made would cover the land in controversy. If the land so surveyed had its lines and corners actually established on the ground, then, if the deed from Lively to Allen and Powers was made with reference to the lines and corners so actually established, there can be no question that the deed so made covers the land, and may be made the basis of five years limitation, though there may be an incorrect call for the beginning corner, estimated from the north corner of the Ruth Peckham survey. That the defendants have occupied the land in controversy up to the lines embraced in the survey made for them for the requisite period to bar the claim of the plaintiff, the evidence clearly shows.

It is, however, contended that the land was situated in Kaufman county, and that therefore the record of the deed made to defendants in Rockwall county was not sufficient registry. It appears that there has been a controversy between Kaufman and Rockwall counties as to the true boundary line between them, and it is not clearly shown that the boundary line between the counties has ever been so established as legally to settle that question. It appears that soon after the organization of Rockwall county, which was before the conveyance to defendants in 1875, the line between the two counties was run, as a witness states, "by proper surveyors and marked upon the ground," and that from the line so run the land in controversy was in Rockwall county.

The two counties, however, seem to have been dissatisfied with the line so run, or at least Kaufman county was, and in 1883 another line was run which placed the land in controversy in Kaufman county. This line seems to have been declared the true line by the commissioners' court for Kaufman county. Whether the county line at either time was established in the manner provided by the statute is not made to appear; hence it becomes impossible for us, with the record before us, to ascertain whether the line between the two counties has ever been legally established upon the ground.

The statutes now in force, as did those in force in and prior to 1875, provided the manner in which the true position of the line between two counties might be determined. R. S., 686, 691; P. D., 1075, 1062; Gen. Laws 1879, p. 138.

If the statute be complied with, the line run, marked, reported to and approved by the county commissioners' court, then the act of May 12, 1846, as does the act of April 22, 1879, declares that *"the line so surveyed and marked shall thereafter be regarded as the true boundary line between the counties."* R. S., 690; Gen. Laws 1879, p. 138.

Under all the laws made for the purpose of furnishing a method by which the lines of a county may be actually established upon the ground, it may be held if the lines have once been definitely fixed upon the ground by an actual survey made, reported and approved, as required by the statute, that a county court has no power to direct another survey to be made and thereby establish a boundary line different from the one established at some former period. It is only when it may appear to the county commissioners court, or to the commissioner of the general land office, that the boundary, or a part of the boundary of a county "is not sufficiently definite and well defined" that action to make it definite is authorized.

When a county line has been once run, marked upon the ground and established in accordance with law, it cannot be said to be indefinite. It may be incorrect, but nevertheless well defined. None of the statutes seem intended to give power from time to time to county commissioners' courts to correct what may have been incorrect in the establishment of a county line on the ground; but seem intended to give a means by which the line or lines may be made definite and certain, and when so rendered, in accordance with the statute, whether correctly run and marked or not, the statutory declaration that "the line so run and marked shall thereafter be regarded as the true boundary line between the counties," ought to be given full effect and held as a prohibition to any further action looking to the establishment of some other line.

It rests with the legislature to define the boundaries of counties and to provide the means whereby their true localities on the ground may be determined, and when these methods have been pursued and the line or lines ascertained as by law required to be, the line or lines so established should be considered the true ones, whether mathematically so or not. It is of more importance that the lines be certain and well defined than that they be absolutely correct. If a different rule were adopted untold injury and confusion might result.

A registration of deeds made to-day, or this year, in the county in which land thereby conveyed in accordance with law is declared to be, and the registration therefore valid for all purposes, to-morrow, next year, or an hundred years hence, by the action of a county commissioners court in establishing different county line or lines may be rendered invalid, and the registry inoperative as notice or for any other purpose. The mind will readily perceive many other matters in which rights would be constantly jeopardized if a rule other than such as we believe to be the true one could be adopted.

If, however, this were not so, we are of the opinion that registration made in a county in which land is shown to be, by a valid, approved and recorded survey of county lines, ought at all times to be held valid registration, even if the county commissioners' court has power to, and subsequently actually does, cause other line or lines to be established, which exclude from the county in which registration has been made land conveyed by a deed formerly registered. The inferences from the record before us are that the line between Kaufman and Rockwall counties had been legally established before the deed under which the defendants' claim was recorded in the later county, and that the land was then in that county, as shown by the lines then established, but since that time the line has been established at another place, which excludes the land from the county in which the deed was registered.

There is, however, as before said, not sufficient evidence to show that the line between the counties has ever been legally established. If this should prove to be true, then the sole question will be—was the deed recorded in the county in which the land was in fact situated? For, when the county lines have never been established, the person recording a deed must ascertain at his peril in what county the land thereby conveyed is situated. Adams *v.* Hayden, 60 Tex., 223.

2. It is urged that the deeds made by the appellant to Hunt and Hawkins operate against him as outstanding title.

Those deeds call for Lively's south-east line, which, if identical with the south-east line of the Terrell survey, would convey the land in controversy to Hunt and Hawkins, but if the south-east line of the Lively six hundred acre tract was not identical with the southeast line of the Terrell survey, but was, as claimed by the defendants, at the place now claimed to be the south-east line of the land conveyed by Lively to them, then the land would not be covered by the deeds to Hunt and Hawkins. If the south-east line of the Lively tract was generally understood to be at the place now claimed to be

the south-east line of the land sold by Lively to the defendants, then this fact ought to be taken into consideration in determining what weight ought to be given to the calls for the Lively line in the deeds to Hunt and Hawkins, and other calls in these deeds might be given a controlling influence in determining what land is covered by the Hunt and Hawkins deeds.

The land conveyed to Hunt and Hawkins seems to have been actually surveyed, and if the deeds to them, which are not found in the record, contain such description of the land conveyed as will show that it was intended thereby to convey only the land below that now in controversy, in accordance with the survey actually made, then it could not be held that an outstanding title in Hunt and Hawkins existed. The question of outstanding title was not passed upon by the court below, and we cannot say from the record that such proof was made as would sustain that defense.

To make the statutes of limitation of five years applicable as a defense, it must be made to appear that the deed under which the defendant claims, embraces the land in controversy- That fact is not sufficiently shown by the record before us, and for that reason the judgment will be reversed ; but as the evidence bearing upon this question, as upon the questions as to the legal establishment of the county line and outstanding title, seem not to be fully developed, it is thought more likely to subserve the ends of justice to remand the cause than to render a judgment here.

The judgment will therefore be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered November 10, 1885.]