## WISE COUNTY v. MONTAGUE COUNTY.

### Decided June 24, 1899.

**1. County Boundaries—Settling Disputed Lines.**

Where, under the Act of May 12, 1846, for establishing county boundary lines, a survey of a county line is made by a surveyor appointed by one county without notice to the other county, his action is unauthorized and not binding on the other county.

**2. Same—Jurisdiction of Commissioners Court—Presumption—Burden of Proof.**

In proceedings to establish a disputed county line, the jurisdiction of the commissioners court is a limited one, and there is no presumption of the validity of the proceedings such as will throw on the county not taking part therein the burden of showing that they were irregular, but the burden is on the other to show that they were regular.

**3. Same—Jurisdiction.**

The jurisdiction conferred upon the district courts by the Act of 1897 (Sayles' Civil Statutes, article 808a), of suits to establish boundary lines between counties, is warranted by the constitutional provision (article 5, section 8, as amended in 1891) conferring upon these courts "such other jurisdiction, original and appellate, as may be provided by law."

APPEAL from Tarrant. Tried below before Hon. IRBY DUNKLIN.

*A. M. Carter* and *C. K. Bell*, for appellant.

*Greene, Stewart & Edrington, Smith & Walker*, and *J. M. Chambers*, for appellee.

STEPHENS, ASSOCIATE JUSTICE.—This suit was brought by Wise County against Montague County "for the purpose of establishing the boundary line between them," as provided in the Acts of 1897, page 222, Sayles' Civil Statutes, article 808a.

The issues and result of the trial are thus sufficiently stated in appellant's brief:

"Wise County contended that it had the line in question legally established and surveyed by one L. E. Camp in 1856; if not then, said county had it legally surveyed and established by A. Devereaux in 1877; or that if neither of these surveys were legally made and the line established, that the Legislature of the State of Texas, by an act entitled, 'An Act to redefine the boundary lines of Montague County,' passed July 9, 1879, made Montague County's south line conform to the north line of Wise and Jack Counties, and plaintiff claimed that the north line of Jack County had been established in 1876 (see Wright v. Jones, 14 Texas Civil Appeals, 423), and that to begin at the northeast corner of Wise County and run to the northeast corner of Jack County (as established in 1876) was the meaning of the Act of the Legislature of July 9, 1879.

"Montague County contended that neither the Camp nor Devereaux lines or surveys made under order of the Commissioners Court of Wise County were legally made, so as to make either the legally established boundary line between the two counties—contending that the County Commissioners Court of Wise County did not proceed according to the law, and give the notice to the adjoining counties as required; and that the survey was begun and made at a different time and place than that fixed in the order of the Commissioners Court of Wise County, directing it to be made.

"Montague County contended that the Act of July 9, 1879, did not mean to make its south line to run from the northeast corner of Wise County to the northeast corner of Jack County (as established in 1876), and that if the Legislature of the 9th of July, 1879, so intended to do, it was violative of the Constitution and void.

"The case was tried by a jury, resulting in a judgment declaring that said line had never been established and marked, and establishing it so as to begin 'at a point thirty miles north and six miles west from the southwest corner of Denton County as fixed by the act of the Legislature of the State of Texas, January 24, 1856, defining the lines of Denton County, and thence, running from the said beginning point twenty-four miles to a connection with the west line of Wise County, which said twenty-four miles was decreed to be, and was established by the court, as the true boundary line between appellant and appellee.'

"The court appointed George M. Williams and John M. Blackburn, of Tarrant County, Texas, as surveyors to survey and mark the said boundary line."

*Conclusions of Fact.*—The evidence tended to show (1) that the County Court of Wise County soon after the organization of the county in 1856

appointed L. E. Camp to ascertain, survey, and mark the boundary line between Cooke and Wise counties; (2) that the order appointing Camp fixed the time and place for him to begin the work, specifying the line to be run; (3) that thereafter during the latter part of that year, a line was run and marked by Camp as the north boundary line of Wise County, but the course of the line as thus run and marked was such as to throw it about one mile too far north at its west end; (4) that the Commissioners Court of Wise County received and approved a report of his work, which went to record in that county and a copy of which was forwarded to the General Land Office; (5) that the minutes of the County and Commissioners Court of Wise County were burned November 24, 1881.

The evidence also tended to show that the Commissioners Court of Wise County in 1877 undertook to establish the north boundary line of Wise County, in pursuance of the law then in force providing for establishment of county boundaries, a dispute having arisen between Wise and Montague counties over this line; and to this end appointed A. Devereaux to retrace and remark it, which he did, following the line previously run by Camp, and a report of his work was also accepted and approved by the Commissioners Court of Wise County. But the evidence further tended to show, and since the verdict is not complained of in this court must be treated as establishing, (1) that the line run and marked by Camp was run without any previous notice to Cooke County (out of the territory of which Montague was afterwards created), and even before the time fixed in the order appointing him to run it; (2) that Devereaux began to retrace and remark the Camp line on the very day that notice was served on Montague County, instead of ten days thereafter as provided by law; and (3) that no surveyor was ever appointed by the County Court of Cooke County to assist Camp, or the Commissioners Court of Montague County to assist Devereaux, in running and establishing the disputed line.

*Conclusions of Law.*—The main question of law involved in this appeal was determined by this court in the case of Marsalis v. Garrison, 27 Southwestern Reporter, 929, as will be seen from the following quotation from the opinion of Chief Justice Tarlton: "Was the line as run by Camp established by any method known to the law as the dividing line between Wise County and Montague? To accomplish such a result, it was incumbent upon the County Court of Wise County to appoint him as a surveyor to ascertain, survey, and mark the line, and further, to cause a copy of the order of the appointment to be presented to the County Court of Cooke County (then including the territory now known as Montague) at least ten days before the time appointed for the running of the line. Act May 12, 1846 (Sayles' Early Laws, art. 1714). The court, in its conclusions, fails to find that any such notice was given. The necessity of such a notice, in order to bind the county in adverse interest, is apparent, because otherwise the proceeding would be wholly ex parte on the part of the acting county, and the result such as might

be easily contemplated to have been brought about by an exclusive consideration of its own interests. It thus follows that the record fails to disclose that the conditions concur which would justify the conclusion that the line run by Camp was declared to be the true line, and established in the manner prescribed by law. Jones v. Powers, 65 Texas, 207."

Counsel for appellant cite Wright v. Jones, 14 Texas Civil Appeals, 423, and Gaines v. Newbrough, 12 Texas Civil Appeals, 466, also decided by this court, as authority for giving conclusive effect to the proceedings of commissioners courts as courts of general jurisdiction. But we see no conflict between Marsalis v. Garrison and the subsequent cases cited, though the opinions in the latter, written by the same learned Chief Justice, contain some rather comprehensive expressions on the jurisdiction of commissioners courts, mainly to the effect that they are constitutional courts of general jurisdiction when acting within the sphere of the powers and duties conferred upon them.

We do not, however, understand it ever to have been within the scope of the powers conferred upon the county or commissioners court of any one county to settle by judicial determination a disputed boundary with another county. The Act of May 12, 1846, Sayles' Early Laws, section 1714, provided the means of settling such a dispute, not by referring it to the county or commissioners courts of either or both counties for decision, but by enabling them to have it settled by surveyors or other competent persons of their respective selection, or by enabling one of them to have it settled by a surveyor of its own selection upon due notice to the other as provided in the fifth section of that act. It will be noted, however, that in the latter case not only must notice have been given the other county, but a surveyor or other competent person must have been appointed by such other county who failed to act, before the surveyor of the moving county was empowered to act alone in establishing the line. The only power given the county or commissioners courts of the two contending counties was the power to appoint the surveyors or other competent persons to run and establish the disputed line. The proceeding was in nature and effect a statutory arbitration, with power conferred on the county courts or, later, on the commissioners courts of the respective counties to choose the arbitrators. It was therefore special, and the jurisdiction limited. And so it has been held by our Supreme Court even in matters of controversy falling within the domain of the general jurisdiction of our district courts. Fortune v. Killebrew, 23 S. W. Rep., 978.

True, said section 5 provided that if either of the surveyors appointed to run the line failed to attend, the one in attendance should proceed alone to perform the duties assigned him and make report to the county employing him, "which," to quote the act, "being approved by such court, shall be recorded as evidence of the line in question, and the line so surveyed and marked shall thereafter be regarded as the true line of the county," and the clause "being approved by such court" was sug-

gestive of discretionary power. But this, however, was limited to the approval of the report merely, and fell far short of that jurisdiction which is defined to be the power to hear and determine a cause. It was at best but a veto power, and not that of original jurisdiction. Where the two surveyors acted together in establishing the line, no such approval was required, but only the clerical work of recording the field notes and map remained to be done.

Since, therefore, the proceeding was special and the jurisdiction limited, the presumptions ordinarily indulged to uphold the proceedings of tribunals of general jurisdiction are inadmissible. Indeed, in this case presumption would be met with presumption. That is to say, if we should presume (notwithstanding the proof to the contrary) that the County or Commissioners Court of Wise County did its duty in the matter of causing a copy of its order appointing a surveyor to be sent to the County Court of Cooke or the Commissioners Court of Montague County, we should also have to presume that no such copy was ever received, or if received that it was not received in time, for no surveyor or other person was appointed by the County Court of Cooke or the Commissioners Court of Montague County, though if notified by Wise County, as claimed, they were duty bound to make such appointments. See sec. 2, Act of 1846, Sayles' Early Laws, sec. 1714. The presumption arising from the action of Wise County was therefore no greater than the presumption arising from the nonaction of Cooke or Montague.

Wise County sought by this suit to show by special proceedings under the statute in force when they were had that the boundary line between Wise and Montague counties had been established at a different place from that fixed by the law creating Wise County, and so as to include more territory than she was entitled to under that law. In order to do this, it was incumbent on her to show that the special proceedings relied on were what the law authorized, and not merely that they had the semblance of statutory validity. This by the verdict, which is amply sustained by the evidence, she failed to do, the preponderance of the evidence showing affirmatively not only that the law was not complied with in the special proceedings relied on, but also that appellant's contention was itself founded upon the error of Camp in running and marking the line in the first instance, which seems to have been the origin rather than the settlement of the controversy. The Act of 1879 added no strength to appellant's contention, but, if any, had the effect of overruling it. As the Camp line was erroneous and unsatisfactory to Montague County, the Act of 1879 redefining the boundaries of Montague seems to have rejected it and declared the true boundary to be where the law creating Wise County had originally fixed it. That and not the Camp line was the north boundary line of Wise County, and the effort to establish a different line, encroaching upon the territory of Montague, seems to have been thus repudiated and the true line re-established. If it had been intended to adopt the Camp line, it would have been in some manner referred to in the act, but the north boundary line running

west was called for, instead of the Camp line, which varied about one mile from a west course, thereby changing the configuration of the county, which had been clearly defined in the law creating Wise County as thirty miles square.

We find no merit in any of the assignments of error.

No question as to the jurisdiction of the District Court or of this court has been raised in the briefs, but we have concluded, after giving the matter some consideration, that the clause in section 8, article 5, of our Constitution as amended in 1891, "and such other jurisdiction, original and appellate, as may be provided by law," warranted the act of 1897 under which the suit was brought. Whether we have appellate jurisdiction of such a controversy it becomes practically unimportant, in view of the conclusion reached in this case, to determine.

The judgment is affirmed.

*Affirmed.*