BIVINS v. LANIER. (No. 965.)

(Court of Civil Appeals of Texas. Amarillo. April 19, 1916. On Motion for Rehearing, May 24, 1916.)

1. BOUNDARIES ☞40(1)—QUESTIONS FOR JURY—LOCATION OF SECTION.

In trespass to try title, the evidence *held* to require submission to the jury of the question of the true location of a survey.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 196–203; Dec. Dig. ☞40(1).]

2. BOUNDARIES ☞54(6)—OFFICIAL SURVEYS—PRESUMPTION OF DUE NOTICE.

Under Rev. St. 1911, art. 5340, as to notice of surveyors running division line between two settlers or occupants, where such survey is proved, it will be presumed, in the absence of affirmative proof to the contrary, that the notice required by the statute was given.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 274, 277; Dec. Dig. ☞54(6).]

3. BOUNDARIES ☞54(1) — SURVEYS — NECESSITY OF NOTICE.

Under such statute, if the notice required has not been given, the survey is not legal.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 268, 275, 276; Dec. Dig. ☞54(1).]

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Action by J. M. Lanier against Lee Bivins.

From a judgment for plaintiff, defendant appeals. Reversed and remanded.

R. R. Hazlewood and A. A. Lumpkin, both of Amarillo, for appellant. Boyce & Davidson, of Amarillo, for appellee.

HALL, J. This is a suit in trespass to try title, filed by appellee, Lanier, against appellant, for the purpose of determining the true locality of section 52, block O–18, D. & P. Railway Company surveys, as it affected the adjoining surveys. Appellant answered by a plea of not guilty. Although a jury was selected, after the conclusion of the evidence, the court instructed a verdict for appellee.

The following is the first assignment of error:

"The court erred in paragraph 1 of the general charge, in peremptorily instructing the jury to find for the plaintiff the land described in the third paragraph of his petition; it being the same land described in the corrected field notes of section 52, block O–18, made by the surveyor of Potter county, for the plaintiff, on the 3d day of November, 1913."

Under this assignment several propositions are asserted, but we do not deem it necessary to consider them in detail. The original field notes of section 52 were made October 6, 1879, and describe the section as follows:

"Beginning at a mound in the west line of survey No. 22, block B–11, 337 varas south from its N. W. corner; thence N. 1,917 varas, a mound in the S. line of survey No. 19, block O–18, 17 varas W. from its S. E. corner; thence W. 1,883 varas to mound in the E. line of survey No. 23, block B–11, 1,884 varas S. from its N. E. corner; thence S. 1,917 varas a mound; thence E. 1,883 varas to the place of beginning."

Surveys numbered 22 and 23, in block B–11, were made in the month of January, 1879. The various surveys composing block No. O–18 were made in October, 1879. The corners of the surveys in block B–11 are fixed upon the ground by well-known and established corners. This is not disputed. Since the location of section 52, according to the field notes, can be readily ascertained from its calls for the lines of the surveys in block B–11, no doubt can arise as to its proper location on the ground.

On the 3d day of November, 1913, the county surveyor of Potter county made and returned to the General Land Office what is termed in the record as:

"Corrected or resurvey field notes of section 52, made for J. M. Lanier (in accordance with an act of the Legislature of Texas, entitled 'An act making the office of county surveyor an office of record,' Approved March 30, 1881. These field notes describe the land as beginning at a large stone and pile of stones set at the intersection of the south line of section No. 20, block O–18, and the west line of section No. 21, block B–11, 288.5 varas from the S. W. corner of section No. 21, and 1,337.5 varas W. of the S. E. corner of section No. 20; thence W. along the south lines of sections 20 and 19, block O–18, 1,883 varas to a stone, set in the E. line of section No. 24, block B–11; thence S. along the E. line of section 24, block B–11, 1,917 varas to a pile of stone on S. E. slope for

the N. W. corner of section No. 51, block O–18; thence E. 1,883 varas to the N. E. corner of section No. 51; thence N. at 1,628.5 varas pass large pile of stone on the bluff, the N. W. corner of section 22, block B–11, at 1,917 varas, the place of beginning."

A copy of the field notes in the record contains in parentheses this notation by the surveyor:

"This construction made according to instructions contained in Land Office letter dated August 24, 1912, addressed to J. M. Lanier."

The letter itself does not appear in the record, nor is there any evidence from the surveyor or any one else giving us any information with reference to the instructions conveyed to the surveyor, nor showing under what authority or act of the Legislature the Land Office proceeded in having the survey made, if indeed it was made by the authority of the commissioner. The act of March 30, 1881 (Acts 17th Leg. c. 66), gives him no such authority.

Appellee contends that under articles 5347, 5349, 5353, and 5357, Rev. St. 1911, the land commissioner was authorized to order the survey in question made. In the first place, it does not appear from the record that the land commissioner, or the acting commissioner, or any one else with authority, ever ordered such survey. The articles of the statute referred to empower the commissioner to order such surveys only when there are conflicts or error in the original surveys, for the purpose of correcting the field notes thereof, or when he shall deem it to the best interest of the state when requested by a party owning a survey which conflicts with another. His right in the last instance is denied, however, where the school survey has been sold to other parties.

[1] There being no question about the location of surveys 22 and 23, in block B–11, according to the original field notes of section 52, calling for these surveys, we are unable to see how a conflict could arise, unless it was caused by what appears from the record to be an attempted resurvey of sections 19 and 20, of block O–18, made in June, 1888, by W. S. Mabry, surveyor of the Oldham district. The field notes of these surveys call for the lines of the surveys in block B–11, but the original field notes of surveys 19 and 20, block O–18, were made in 1879, and are evidently office surveys and do not show any conflict, the beginning corner of the former being on section 18 of the same block, and of the latter the southeast corner of section 19. We think the calls for the well-established surveys in block B–11, as found in the original field notes of section 52, block O–18, are locative calls, from which the position of the section on the ground may be definitely ascertained, and until it is shown that the attempted correction of its field notes which created the conflict has been authoritatively made by the commissioner, to say the least, the question of its proper location should

have been submitted to the jury. The corrected field notes change the location of the section on the ground materially to the detriment of appellant.

[2, 3] Article 5340, Revised Statutes, provides that it shall be the duty of the surveyor in all cases, before he runs a division line between two settlers or occupants claiming lands, to notify in writing the parties interested before running the same, and any survey which may be made contrary to the true intent and meaning of this article shall not be a lawful one. Appellee Lanier testified that appellant was not notified before nor at the time this survey was made, and the record shows he did not know of it until a long while thereafter. We think this contention must also be sustained.

This question arose upon a similar statute in Indiana, in the case of Williams v. Atkinson et ux., 152 Ind. 98, 52 N. E. 603. By the statute of that state, ten days' notice of a survey was required as to resident owners of adjoining lands, unless all the proprietors of the lands adjoining the corner which the county surveyor was required to establish were present and consenting to the survey, or had consented thereto in writing. In that case the record failed to show that any notice was given. The Supreme Court of Indiana held that the field notes of the county surveyor were inadmissible, because they failed to show that any notice was given or that the proprietors of the adjoining lands were present or that they had consented in writing, and used this language:

"To render the supposed record admissible in evidence, the names of such owners of the adjoining lands as were present should have been set out, or it should have been shown by other evidence that they had been duly notified, had consented in writing to such survey, or were present and consenting to it. Such evidence by parol or in writing would have been competent. This omission in the document offered was not supplied by any kind of proof. If notice was not given to the adjoining landowners, or if they did not consent in writing, or were not present and consenting, the surveyor had no authority to establish or perpetuate a corner, or to view and establish a line, and his proceedings under such circumstances were void. This defect in the supposed record is not obviated by any presumption that the officer did his duty."

We take it, under the decisions of this state, the presumption would obtain that the surveyor had given the notice required by the statute, in the absence of affirmative proof that such notice was not given; but, where it clearly appears that Bivins had no notice, the statute has been violated, and a survey made which, as appellee claims, "is not legal." This is the construction which has been placed upon similar statutes by the courts of this state. Article 1378, Revised Statutes, provides, with reference to the boundary lines between counties, that, when the commissioners' court of one county shall order any line of the county surveyed, a copy of such order shall be sent to the county courts of the adjoining counties interested

in such boundary line, ten days before the meeting of the county court in such adjoining county. In the case of Wise County v. Montague County, 21 Tex. Civ. App. 444, 52 S. W. 615; Stephens, Justice, said:

"The necessity of such a notice, in order to bind the county in adverse interest, is apparent, because otherwise the proceeding would be wholly ex parte on the part of the acting county, and the result such as might be easily contemplated to have been brought about by an exclusive consideration of its own interest. It thus follows that the record fails to disclose that the conditions concur which would justify the conclusion that the line run by Camp was declared to be the true line, and established in the manner prescribed by law."

The holding in that case is applicable here. Under this record, the correct location of the land, according to the survey made apparently at the instance of appellee, is, to say the least, extremely doubtful, which emphasizes the necessity and propriety of serving notice upon appellant before the surveyor acted.

The judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

We have again carefully reviewed the record in this case, in the light of additional authorities presented by counsel, and with the exception of the statement in our original opinion that "the calls for the well-established surveys in block B–11, as found in the original field notes of section 52, block O–18, are locative calls," we are not inclined to change our holding. The question of whether or not these calls are locative calls may, under the record, be a question of fact, and upon another trial should, if the evidence warrants it, be submitted to a jury. With this exception, the motion is overruled.