### ADAMS et al. v. BROWN et al.

No. 3583.

Court of Civil Appeals of Texas. El Paso.

Dec. 30, 1937.

Rehearing Denied Feb. 10, 1938.

A. G. Schluter, of Jefferson, Newland & Cornett, of Linden, and Henderson & Stevens, of Daingerfield, for appellants.

Harrison, Scott & Rasberry, of El Paso, Martin, Moore & Otey, of Jefferson, and George N. Otey, of Ardmore, Okl., for appellants, the Adams Heirs.

R. L. Holliday, of El Paso, B. F. Whitworth, of Linden, Watkins & Mays, Dallas C. Biggers, and D. D. Mahon, all of Dallas, King, Mahaffey & Wheeler, of Texarkana, and Edgar Monteith, of Houston, for appellees.

WALTHALL, Justice.

This is an action in trespass to try title brought by R. P. Willis and wife, Willie Willis, Herman Brown, and M. H. Marr, as plaintiffs, against a large number of persons as defendants, for title and possession of 31½ or 33.37 acres of land, a part of the Robert Trammel survey in Cass county, Tex. All the defendants were cited by publication, and only those who answered in the suit will be referred to, or are involved here.

The original petition was filed on January 20, 1936; the trial was had on the first amended original petition, and the answers thereto. Plaintiffs claim title by deed from the North Texas Land & Timber Company, and title under the three (Vernon's Ann.Civ.St. art. 5507), five (article 5509), ten (article 5510), and twenty-five year (article 5519a), statutes of limitation. Herman Brown holds an oil and gas lease under Willis and wife.

The defendants Charles A. Graham, Exah Graham Harvey, and E. N. Harvey, referred to as the "Graham heirs," answered by plea of not guilty and by cross-

action for a part of the land involved in the suit.

Mrs. Pearl Adams et al., heirs of J. M. Adams, and referred to as "Adams heirs," answered by general demurrer, not guilty, and by special answers, and by cross-action claiming to own a part of land involved in the suit.

As appears from exhibits in the record, plaintiffs' record title is as follows, omitting dates:

Patent from the state of Texas to Davis Lane, assignee of Robert Trammel; deed from Davis Lane to J. P. Mathews, Sr., certified copy of will of J. P. Mathews, probate proceedings, proof of will, etc., had of J. P. Mathews, Sr.; deed from G. W. Watson and wife, Marietta Watson (née Mathews), devisee under the will of J. P. Mathews, Sr., 'to A. D. Tullis, conveying 569 acres including the north 8 acres of the 33.37 acres in controversy; deed from A. D. Tullis to Bridgeford & Co., conveying 569 acres, including the north 8 acres of the 33.37-acre tract; deed from P. Galt Miller et al. (surviving partner of Bridgeford & Co.) to Jefferson Lumber Company, conveying 351.58 acres, including 8 acres of the 33.37 acre tract; deed from the Jefferson Lumber Company to North Texas Land & Timber Company, October 4, 1889, conveying 351.58 acres, including the north 8 acres of the 33.37-acre tract; deed from North Texas Land & Timber Company 'to R. P. Willis, dated January 7, 1901, conveying (by actual survey of ground) 33.37 acres; quitclaim deed from J. P. Mathews to J. M. Adams, March 1, 1884, conveying 589 acres, including south 25 acres of 33.37-acre tract; oil and gas lease from R. P. Willis, Sr., and wife, to Herman Brown, January 11, 1935.

The trial court found: "J. M. Adams purchased a tract of land, including a part of the tract of land involved in this lawsuit, and held title to same in trust for the North Texas Land & Timber Company; that J. M. Adams never exercised any act of ownership or dominion over said tract of land; J. M. Adams never paid any taxes thereon; that said tract of land was good timber land, and said Adams never cut any timber therefrom; that North Texas Land & Timber Company exercised all the customary acts of ownership and claimed said tract of land, and cut timber therefrom, and that J. M. Adams acquiesced in said acts of ownership and claims of ownership of the North Texas Land & Timber Company; that the circumstances of a long period were such as to justify the court, and the court does hereby presume a deed from J. M. Adams to the North Texas Land & Timber Company; that J. M. Adams executed a deed covering the tract of land under search to North Texas Land & Timber Company."

The case was tried without a jury. The trial court filed findings of fact and conclusions of law. The findings are lengthy, and we will, very briefly, state only enough to indicate the substance of the findings. The court found that the land involved is in Cass county, and consists of 33.37 acres; the tract is property described in plaintiffs' petition, and was found and surveyed on the ground by E. S. Rest, civil engineer; plaintiff R. P. Willis acquired title to the land in controversy by a duly registered deed from the North Texas Land & Timber Company, of date January 7, 1901, and was in actual, continuous, and adverse possession, and in the finding stated all the facts necessary under the five years' and twenty-five years' statutes to acquire title by periods of five years' and twenty-five years' statutes of limitation.

The court found that the land involved in the suit had passed out of the state, and that none of the defendants had exercised dominion over said lands, or any part thereof, or paid taxes thereon during the period of twenty-five years next preceding the filing of the suit, and that plaintiffs (except plaintiff M. H. Marr, who disclaimed) had openly exercised dominion over and claimed said lands, paid taxes thereon before becoming delinquent, for the twenty-five years' period, and rendered judgment for plaintiffs and against all defendants on all issues pleaded by them, and from which judgment all defendants appeal.

### Opinion.

In addition to the findings of fact noted in the judgment, the trial court, on the motion of appellants, made findings of fact. On the findings made the court rendered judgment for appellees on the statutes of limitation of five and twenty-five years.

Appellants question the sufficiency of the evidence to sustain the judgment for appellees based on the statute of limitation of five years.

It would serve no useful purpose to discuss the sufficiency of the evidence to sustain the judgment against the Adams' interest for the 25 acres under the statute of

limitation of five years, if the judgment can be sustained either under the twenty-five years statute, or under the findings of the trial court that J. M. Adams held the title to the 25 acres only in trust for his employer, the North Texas Land & Timber Company, and that J. M. Adams never owned any interest in said land, or that J. M. Adams executed a deed to the North Texas Land & Timber Company, as presumed and found by the court.

■ However, the point sought to be made in the proposition is that the deed under which appellees held the land did not sufficiently describe the land involved. The deed describes the land as follows: The North Texas Land & Timber Company, for the consideration stated, grants, sells, and conveys to R. P. Willis, all that certain tract of land containing 31½ acres of the Robert Trammel H. R. survey, and more particularly described as follows: Beginning at the northeast corner of the James Davenport 770-acre survey; thence south with east line of said James Davenport survey, 1900 vrs. to the said east corner of same; thence east 94 vrs. to the northeast corner of the John H. Rives survey; thence north passing the southwest corner of the J. B. Hughes survey and north with the west line of said Hughes survey, passing the northwest corner of same with the west line of Cass county school land running 1900 vrs. from northeast corner of John H. Rives survey; thence west 94 vrs. to place of beginning, containing 31½ acres, more or less, and closing with the warranty clause. We think the deed is sufficient to give notice under article 5509, R.C.S.; Rosson v. Rosson, Tex.Civ.App., 103 S.W.2d 781, and cases cited; Kilpatrick v. Sisneros, 23 Tex. 113, 137; 2 Tex.Jur. p. 268; Jones v. Powers, 65 Tex. 207; 2 Tex.Jur. p. 255.

■ Appellees' petition describes the land as 33.37 acres of land in Cass county, Tex., and out of the Robert Trammel Headright survey, abstract No. 1028, and particularly described by metes and bounds, stating the beginning corner, its markings, its courses and distances, according to a survey made on the ground by E. S. Rest, civil engineer, stating date of the survey, and stating appellees' actual, peaceable, continuous, and adverse possession of the land described, cultivating, using, and enjoying same, and claiming same adversely to all others, and that they and those under whom they claim the land and hold-

ing same in adverse possession under recorded deeds for the periods of time stated.

E. S. Rest, the civil engineer, testified, in substance, that the description of the land in appellees' amended petition described the same tract of land as in the deed from North Texas Land & Timber Company to R. P. Willis, January 7, 1901; that he had that deed when he made the survey and prepared the field notes used in the petition.

The trial court found that the land described in Willis' deed is the same as in appellees' trial petition.

The record shows that North Texas Land & Timber Company paid taxes on from 474 to 1,414 acres of the Trammel survey for every consecutive year from 1884 to 1901, except 1896, for which no assessment appears to have been made. For 1897 to 1901, inclusive, taxes were paid before they became delinquent. Willis, Sr., testified that he paid taxes on the tract involved here every year since he bought it (1901), and the trial court so found. The evidence shows, we think, that the taxes were paid concurrently in point of time with possession and use.

Proof of adverse possession and claim of ownership, with use of the land by appellees is amply sufficient.

■ While the court found in favor of appellees on the ten years' statute of limitation, the judgment does not specifically vest title in appellees on that finding. The parties, however, have briefed the case on the ten-year statute, and therefore we consider it.

■ The court found that North Texas Land & Timber Company, prior to 1900, went into possession of said tract of land and built thereon corrals, a storehouse, a railroad or tramway, a spur or switch track, built houses and residences, and used them as living quarters for its employees, and other structures in furtherance of its business; it cut timber thereon and maintained a logging camp thereon; that such camp was maintained in whole or in part for a period of more than ten years. "That during all such ten year period from 1890, or prior thereto, to 1901, North Texas Land & Timber Company claimed title to the tract of land and exercised all the usual acts of ownership thereon, clearing the land for the logging camp, cutting timber and maintaining the railroad and the other structures; that from 1890 to 1901 there

was at all times one or more of the houses on the land in which employees of the North Texas Land & Timber Company were living."

The trial court found that none of the appellants had ever paid taxes on the land in controversy or ever exercised dominion over it, and that R. P. Willis annually paid all the taxes on the land, and had openly exercised dominion thereof since his purchase in 1891, and that Willis and his predecessor in title, the North Texas Land & Timber Company, had annually openly exercised dominion over and annually paid the taxes thereon before they became delinquent for more than 25 consecutive years prior to the filing of this suit.

The court made other findings more or less connected with the ten and 25 years' limitation pleas, and discussed by appellants under other propositions, to the effect that the negroes secured permission from Willis to continue to maintain a graveyard and bury their dead thereon; that during the period Jesse Bauguss, for the service stated, rented from Willis part of the land and cultivated a garden thereon, and that Henry Mitchell rented from Willis a part of the land and cultivated a garden thereon.

The evidence on the several above findings made by the trial court is too voluminous to review and state here; we have carefully read the evidence, and have concluded that it is sufficient to sustain the findings made under the ten-year statute. Appellants' proposition is overruled.

■ The trial court, in the judgment entered, vested title in appellees under the 25 years' limitation statute. Article 5519a, Vernon's Ann.Civ.St.

The lands involved here have been patented and were not claimed by the state; the appellees hold the apparent record title thereto, and, under the evidence and the court's findings, have exercised dominion over the land and have paid the taxes thereon for the period of more than 25 years next preceding the filing of this suit. Such facts, we think, constitute a prima facie title in appellees to the land involved.

■ On the part of appellants, the undisputed evidence shows, and the trial court found, that none of them had exercised any dominion over any part of the land, nor had paid taxes, and had not asserted title to any part of said land other than in a deed to appellant J. M. Adams,

until the discovery of oil in the vicinity of the land.

As to the J. M. Adams deed, as above stated, the trial court found that Adams purchased a tract of land, including 25 acres, a part of the land involved here, and held title to same in trust for the North Texas Land & Timber Company, and the court, under the evidence, presumed a deed from Adams to said company, covering the land so held in trust. 2 Tex.Jur. page 22, § 9, and cases cited without copying them here. We think, under the evidence, the court is sustained in the holding.

■ The appellants, Graham heirs, claim 8 acres of the land involved under a tax deed from the tax assessor and collector to P. M. Graham, the deed dated August 4, 1863. The tax deed shows on its face that the assessor and collector of taxes levied upon 27,310 acres of land comprising fifty-three separate tracts under separate individual ownerships, for the purpose of collecting the aggregate amount of taxes against all of the collective tracts. As claimed in appellants' brief, the tax deed covers title to 200x94 vrs. of the land in controversy, a part of the 1,280 acres in the tax deed out of the Robert Trammel survey.

P. M. Graham died in 1881; his daughter, Exah Graham Harvey, reached the age of 21 years in 1900. We have not found in the record that the court made any finding as applying specially to the title of the Graham heirs, apart from the Adams heirs, but considered the 33.37-acre tract as one tract, and the evidence on the issues under the several limitation statutes as applying alike to the Adams heirs' 25 acres and the Graham heirs' 8 acres, so far as the evidence had application to the whole tract, or to the part to which it had special application.

In the judgment the court decreed that all of appellants take nothing by their cross-action, and vested the title to the 33.37-acre tract in appellees, as pleaded.

Without discussing the tax deed title of the Graham heirs, and considering all of the evidence of adverse possession and claim of appellees, and payment of taxes, as applying to the whole of the acreage in controversy as one tract of land, as pleaded, we have concluded that the court was not in error in the judgment entered as to the title of the Graham heirs. We are not considering a comparison of titles of appellees and appellants, but we are con-

sidering the record title of each in connection with the pleas and the evidence under the several statutes of limitation.

█ The objection to the admission of the testimony of R. P. Willis, Sr., and R. P. Willis, Jr., to the effect that R. P. Willis, Sr., has had "dominion over the land in controversy," as being only a conclusion, is without merit in view of the other evidence detailing the extent and character of the dominion.

Other propositions not specifically discussed are involved in those discussed. They have been considered, and are overruled.

We have found no reversible error, and the case is affirmed.

Affirmed.