**COUNTY OF CALLAHAN et al., Appellants,**

**v.**

**COUNTY OF COLEMAN, Appellee.**

No. 4050.

Court of Civil Appeals of Texas.

Eastland.

June 10, 1966.

James Paul Shanks, County Atty., Callahan County, Baird, James E. Jeffrey, County Atty., Taylor County, Abilene, for appellants.

Woodward & Johnson, Halbert O. Woodward, Coleman, for appellee.

GRISSOM, Chief Justice.

Coleman County sued Callahan and Taylor Counties for the purpose of establishing the boundary line between said counties, alleging that the south boundary line of defendants, where common with the north boundary line of Coleman County, was a line surveyed and established by Evans, in 1885, and the established, recognized and true boundary line between said counties. There were three lines involved. The first was the line surveyed by Evans, Coleman County's Surveyor, in 1885, which purported to establish the north boundary line of Coleman County and, so far as they join Coleman County, the south boundary lines of Callahan and Taylor Counties. The second was a line surveyed by Haley, Callahan County's Surveyor, in 1898, purporting to establish the south boundary line of Callahan County south of the Evans' line. The third was a line run, in 1882, by Henderson for Taylor County purporting to fix the south boundary line of Taylor County still further south of the Evans' line than Haley's. There are original markers which can be located on said lines. It was agreed that each could be located and established on the ground. The cause was tried to a great extent upon an agreed statement of facts. The court found that the Evans' line was the northern boundary line of Coleman County and, where said counties touched, the southern boundary line of defendants. Taylor and Callahan Counties have appealed.

Appellants' points are that the court erred in finding as a fact that (1) the Evans' line runs along a position that is west from the west corner of Comanche County, because such finding is against the great weight and sufficiency of the evidence, and that the court erred in finding that (2) the Evans' line, as marked on the ground by him in 1885, is the recognized and established northern boundary of Coleman County and the south boundary lines of Callahan and Taylor Counties, where the latter two counties join Coleman County. As to this second point, appellants' contention is that there is no evidence to support the finding. Appellants further contend that the court (3) erred in finding that the line surveyed by Haley, in 1898, is located south of a position west of the west corner of Comanche County, because such finding is against the great weight of the evidence; that the court erred (4) in finding as a fact that the line surveyed by Haley does not run due west from the west corner of Comanche County, (as the court found the Evans' line did), because such finding is against the greater weight and sufficiency of the evidence; that the court erred (5) in refusing to find as a fact that the Commissioner of the General Land Office does not recognize any of said lines over the other, as requested by appellants, because such fact was "clearly supported by the evidence"; that the court erred (6) in refusing to find as a fact that the tax assessor-collector of Coleman County, in levying taxes, does not recognize the Coleman County line as established here, as requested by appellants,

because such fact is "clearly supported by the evidence"; that (7) the court erred in finding as a fact that the variation used by most surveyors at the time said surveys were made, in that area, was 9 degrees and 30 minutes east, instead of 9 degrees and 12 minutes east, as called for by Haley, because such finding was against the greater weight and preponderance of the evidence; that (8) the court erred in concluding that the Evans' line was established under the law then in force as the true northern boundary line of Coleman County, because said finding is against the greater weight and sufficiency of the evidence and that (9) the court erred in rendering judgment for Coleman County, because the evidence was insufficient to support it.

A glance at a map of the area involved shows that the beginning point of some surveys and description of some counties call for the west corner of Comanche County as the beginning point. Because of the unusual slanting position of the lines surrounding Comanche County, compared to those of adjoining counties, that very material point is not only the most western point but, also, the northwest corner of Comanche County.

In support of appellants' contention that the court erred in finding as a fact that the Evans' line runs along a position that is west of the west corner of Comanche County, they point out that the Legislature, in 1876, as shown at page 213 of Batts' Annotated Civil Statutes, corrected some boundaries by the statement that the south boundary line of Callahan and Taylor Counties ran due west from the west corner of Comanche County, but that Evans commenced his survey at the northwest corner of Brown and the northeast corner of Coleman, about 16 miles west of the northwest corner of Comanche County. Appellants point out that Surveyor Barnett testified that the north line of Coleman County, as surveyed and marked by Evans, runs "reasonably close" to a due westerly direction from the west corner of Comanche.

Appellants say there is no evidence to support the finding that the line established by Evans has been recognized and established as the north boundary line of Coleman County, or as any part of the south boundary lines of Callahan and Taylor Counties; that the only evidence of recognition of the Evans' line consists of two markers on the highway and one on railroad right-of-way between said Counties and that there was no evidence that said markers were placed there as the official acts of said counties and, therefore, they are not binding on appellants.

As to the third and fourth points, appellants say that Haley began his survey of the south line of Callahan at the west corner of Comanche County and that the General Land Office map of Coleman County shows that the south boundary of Callahan is not at any place the same line as the north line of Coleman County. Appellants conclude that the Commissioner of the General Land Office does not recognize one line over the other. (We understood all parties to agree during argument that maps in the land office show both the Evans and Haley lines.) Appellants further argue that the tax assessor-collector of Callahan County and the same officer of Coleman County have worked out an arrangement as to what land each shall tax and that neither follows any of said lines in making their assessments. Appellants, therefore, urge there is no evidence of recognition by any county involved of the boundary line as fixed by Evans and found by the trial court.

Appellants say, in support of their contention that the finding that the Evans' line is the north boundary line of Coleman County is erroneous, that the order of Coleman County for the Evans' survey shows that certified copies thereof were "issued" to the Commissioners Courts of Callahan and Taylor Counties, but that there is no evidence that a surveyor from either took part in the Evans' survey, or that such notices were served. They conclude that appellants are not bound by the Evans' survey

as establishing said joint boundary line. They cite Wise County v. Montague County, 21 Tex.Civ.App. 444, 52 S.W. 615, and Jones v. Powers, 65 Tex. 207.

Appellants argue that the burden of proof was upon Coleman County to prove the location of said line and that it cannot rely upon lack of evidence from appellants to support their judgment. They quote from Article 1606, Vernon's Ann.Civ.St.:

"The county boundaries of the counties in this State as now recognized and established are adopted as the true boundaries of such counties, and the acts creating such counties and defining the boundaries are continued in force."

Appellants say appellee has proved only that the Evans' line is more accurate mathematically, but that this is not the test; that in such a suit "where the line has been established and recognized by the counties interested, and by the commissioner of the general land office of Texas, the law requires that same shall be declared the true line, though not mathematically correct * * *" Lynn County v. Garza County, (Tex.Com.App.), 58 S.W.2d 24, 26. Appellants further say it was incumbent upon appellee to prove its allegation that the Evans' line has been so recognized as said common boundary line. That, on the contrary, the evidence shows it has not been recognized by said counties, not even by the tax assessors-collectors of Coleman and Callahan Counties. Appellants cite Travis County v. Williamson County, Tex.Civ. App., 4 S.W.2d 610, 612; Hunt County v. Rains County, Tex.Civ.App., 7 S.W.2d 648, and Jones v. Powers, 65 Tex. 207. They conclude that appellee failed to sustain its burden of proving that the Evans' line was established in compliance with law as the correct boundary line and, therefore, the judgment should be reversed and judgment rendered for appellants.

We recognize the law asserted by appellants. But, we think it is not applicable here. The real question presented is whether there is sufficient evidence to support the court's finding that the Evans' line is, to the extent found, the common boundary line between Coleman and Callahan and Taylor Counties. We hold that there is sufficient evidence.

The court found as a fact that (5) the Evans' line runs west from the west, or northwest, corner of Comanche County. There is ample evidence to support that finding. Mr. Barnett, a registered public surveyor with 15 to 20 years experience, testified that Evans began his survey approximately 16 miles west of the west corner of Comanche County; that the north line of Coleman County, as surveyed by Evans, runs "reasonably close" to a due westerly direction from the west corner of Comanche County. Plaintiff's exhibit 1, a certified copy from the General Land Office, shows a survey, in 1883, by the county surveyors of Callahan and Eastland Counties. They surveyed the east boundary line of Callahan County and the west boundary line of Eastland County for said counties. When they reached the south end of Callahan they were met by the county surveyor of Brown County. They stated in that 1883 report that they were acting in accordance with the law. They disagreed with Brown County's surveyor as to the location of the north line of Brown County and it was agreed that would be settled after August 20, 1883. Plaintiff's exhibits 2 and 3 show that surveyors Cochran, for Callahan, and Morgan, for Brown County, established the north line of Brown and the south line of Callahan Counties. Their field notes show that said south line of Callahan ran west. The north line of Brown County was established by three surveyors; the witness trees called for in Cochran's survey for Callahan County are the same witness trees called for as the beginning point in Coleman's exhibits 2 and 3, showing the north line of Brown County; therefore, in 1883 and 1884, three surveyors, acting for Callahan, Brown and Eastland Counties,

agreed on the correct location "under the law" of the north line of Brown County as running due west of the west corner of Comanche County and from the southwest corner of Eastland to the northeast corner of Coleman to be coexistent. Plaintiff's exhibit 4 shows that the Evans' line goes west and that he began his survey at the terminus of the line surveyed by Cochran and Morgan fixing the north line of Brown County west of the northwest corner of Comanche. From all of which, appellee contends and we agree, the court was authorized to conclude that said surveyors were conscious of their duty under the law, as stated in plaintiff's exhibit 1, were careful in locating the north line of Brown County; that they found the line shown on Coleman's exhibits 2 and 3, west of the northwest corner of Comanche County. The field notes for the lines shown in plaintiff's exhibits 2, 3 and 4 show that the line here in question runs west from the northwest corner of Comanche County. The parties agreed that (14) plaintiff's exhibits 2 and 3, showing the north line of Brown County, forms a straight line with that established by Evans and, if the north line of Brown County runs west from the west corner of Comanche County, and there is evidence that it does, then the Evans' line runs west of the west corner of Comanche County.

The court found (1) that the northwest corner of Brown County was 16 miles due west of the west, or northwest, corner of Comanche County. Since the Evans' line begins at this northwest corner of Brown, 16 miles due west of the northwest corner of Comanche, and runs West, it follows that the Evans' line is in a position west of the controlling Comanche County northwest corner. The court found (1 and 2) that the Evans' line is in the position designated by the Legislature in 1858 as the boundary in question, to-wit, west of the northwest corner of Comanche County. Appellee concludes, and we think correctly, that the court was authorized to find that Coleman County's north line is in a position due

west of Comanche County's northwest corner.

The court's finding of fact number six was that the Evans' line, as marked on the ground, had been recognized as the north boundary line of Coleman County and the south boundary line of Callahan and Taylor Counties, in so far as same coincides with the north line of Coleman County. Appellee says, and we think correctly, that it was not required that Coleman County prove the Evans' line had been recognized by any governmental agency. In any event, the evidence does show that it has some recognition as such boundary line. There is a marker on the Santa Fe Railroad designating said county boundary line at a point where said railroad crosses the Evans' line. Surveyor Barnett testified that, by projecting from established monuments he found a marker showing said county line on said railroad right-of-way; that said marker was on the Evans' line; that it showed said county boundary line to be where Coleman County claims it is; that he found a marker on U. S. Highway 84, between Coleman and Abilene, designating that boundary line; that this marker was on the Evans' line; that he found a marker between Callahan and Brown Counties on the highway between Brownwood and Cross Plains, that it was on the Cochran and Morgan line, an eastward projection of the Evans' line, and that said two highway and said railroad markers placed said county lines at the same places and positions that Evans did. In addition, we think it may reasonably be concluded that the Evans line was recognized by Callahan County. Plaintiff's exhibits 2 and 3 show the field notes of the south line of Callahan County and the north line of Brown County established by Callahan and Brown County surveyors in 1884, and filed with the Commissioners Courts of said counties. They are in accord with the Evans' boundary line. The statute cited by appellants fixed the south boundary line of Callahan and Taylor Counties as a line running west from the west corner of Comanche County as Evans did. In 1883,

Callahan County's surveyor showed Callahan County's south boundary line for some distance to coincide with the north boundary line of Brown County, where they touch each other. Evans, two years later, extended said line west showing the northern boundary of Coleman and southern boundary of Callahan counties to be where it was fixed by the court. That line extending west on the south of Taylor was also recognized by the Texas Highway Department and said Railroad Company.

We agree with the court's findings that the Haley line, claimed by appellants to be their south boundary line, was south of a position west of the west corner of Comanche County. Barnett testified that the Evans' line was approximately west of the west corner of Comanche County but that the Haley line ran south of the Evans' line and south of the northwest corner of Comanche County. He testified that if two surveyors started at the west corner of Comanche County and went west 16 miles, one using the variation of 9 degrees 30 minutes east, as all surveyors except Haley did, and the other 9 degrees 12 minutes east, as Haley did, that they would be approximately 155 varas apart and the southern line would be south of the line called to extend west from the northwest corner of Comanche County. He testified that he located the Haley line and the Evans' line by their markers on the ground and that there the Haley line was 115.8 varas south of the Evans' line. Appellee reasonably concludes that such divergence of the Evans and Haley line might be largely explained by the difference in variation used. The evidence supports the conclusion that the Evans' line runs west of the west corner of Comanche County but that the Haley line runs south thereof. It follows that the Haley line was not in a position west of the northwest corner of Comanche County, as required.

Appellants' contention that the land commissioner did not recognize one line over the other and that the court committed reversible error in not so finding may be overruled, among other reasons, because such a finding would be on an evidentiary issue. Out of five surveys made from 1883 to 1885, inclusive, four used a variation of 9 degrees 30 minutes east. Haley's variation put his line running southwest, instead of west, of the northwest corner of Comanche County. Barnett testified that such variation showed the Evans' line as being west of Comanche County's northwest corner; that he assumed said variation was correct because everyone used it except Haley, and that it was the commonly accepted variation at the time said surveys were made. If Evans established and marked his line in accordance with the law then in force, and the evidence sustained a finding that he did, then the court correctly established the Evans' line as the true boundary line here in dispute. If the Evans' line as he established and located it on the ground, has been recognized and established as the true boundary line then the court's said conclusion finds further support in the record. It seems to be admitted that the Evans' line was the most "mathematically correct" line to be used in establishing the boundary line in dispute. Article 1591 provides that if it should be found that the boundary line in question has "been heretofore established under the law then in force" it shall be declared to be the true line. The evidence supports the conclusion that Evans established his line in accord with the law then in force.

Under the findings of fact, which we find to be supported by ample evidence, the Evans' line is, as the court concluded, the northern boundary line of Coleman County and, to the extent that the northern boundary of Coleman County coincides with the southern boundaries of Callahan and Taylor Counties, it is their southern boundary line. All of appellants' contentions have been carefully considered. They are overruled. The judgment is affirmed.